IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

JEANNETTE BOBO                                                            PLAINTIFF

vs.                                                    CIVIL ACTION NO. 3:08CV00125-SAA

MICHAEL J. ASTRUE,
COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION                                           DEFENDANT

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Jeannette Bobo for disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff filed applications for SSI and DIB on May 29, 2007, alleging disability beginning on April 29, 2007.[1] (Tr. 72-79). Plaintiff's claim was denied initially (Tr. 41-52) and on reconsideration. (Tr. 56-57). She filed a request for hearing (Tr. 58) and was represented by an attorney at the administrative hearing on November 27, 2007. (Tr. 22). The Administrative Law Judge (ALJ) issued an unfavorable decision on February 8, 2008. (Tr. 11-17). Following the ALJ's decision, plaintiff submitted additional medical evidence from her treating physician to the Appeals Council (Tr. 7-8), and the Appeals Council denied plaintiff's request for a review. (Tr. 1-5). Plaintiff filed the instant appeal from the ALJ's decision, and it is now ripe for review. In

---

[1] Although the DISCO DIB Insured Status Report lists plaintiff's alleged onset as January 1, 1961 (Tr. 78), plaintiff testified that her alleged disability began on April 29, 2007. (Tr. 22).

accordance with the provisions of 28 U.S.C. § 636(c), both parties consented to have a magistrate judge conduct all the proceedings in this case, and the undersigned thus has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on January 6, 1959 and completed the twelfth grade. (Tr. 22). She was 48 years old at the alleged onset of her disability. (Tr. 22). She was previously employed as a sewing machine operator in the garment and furniture manufacturing industries and as a cashier. (Tr. 35). She contends that she became disabled as a result of a partial amputation of her left index finger in August 1999[2] and a partial amputation of two fingers on her right hand on May 21, 2007.[3] (Tr. 23-24, 174-177). Plaintiff is right-handed. (Tr. 24). In 2000 or 2001 after the amputation on her left hand, she returned to work as a cashier and worked until she was fired in 2005 or 2006.[4] (Tr. 128).

The ALJ determined that plaintiff suffered from "severe" impairments, including amputation of fingers and osteoarthritis. (Tr. 13). However, the ALJ found that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.*

---

[2]The plaintiff underwent amputation of the proximal interphalangeal joint of the left finger due to osteomyelitis. (Tr. 175).

[3]In April 2007, x-rays revealed loss of bone stock and severe osteoporosis in the right hand. (Tr. 159). Her symptoms worsened and she was diagnosed with osteomyelitis of the right index and ring fingers. (Tr. 163). On May 21, 2007, the plaintiff underwent amputation of the right ring finger and index finger. (Tr. 174).

[4]Plaintiff testified that she worked at Dollar General from 2001 until she was fired in 2005. (Tr. 26-27). Plaintiff's Work History Report states her job title of cashier from 2000 to 2006. (Tr. 128).

She further determined that Listing 1.05 for amputation was not satisfied because it did not result in extreme loss in function of both upper extremities as defined in 1.00B2b, *id.,* and that Listing 1.02B was not met because a peripheral joint was not involved. *Id.*

Adopting the June 2007 physical residual functional capacity assessment completed by non-examining medical consultant Dr. Louis Saddler (Tr. 166-173), the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) for:

> "lifting/ carrying 20 pounds occasionally and 10 pounds frequently; standing/ walking 6 hours; sitting 6 hours; no pushing/ pulling with the right hand; and no handling with the right hand." (Tr. 13-14).

The ALJ further determined that the plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. 15). The ALJ found that her "description of symptoms and resulting limitations is quite vague and general, lacking the specificity which might otherwise make it more convincing" and noted that the plaintiff's ability to dress herself, care for her own hygiene and drive without assistance indicates some use of both hands. *Id.*

At the time of the ALJ hearing, the plaintiff claimed that she had pain in her right hand "day and night, off and on" (Tr. 29-30), and the record reflected that she took narcotic pain medication. (Tr. 15, 31-32, 141). Additionally, she claimed to have swelling in the remaining fingers of her right hand. (Tr. 33). The plaintiff testified that she had difficulty bathing, dressing, cooking, grocery shopping and driving.[5] (Tr. 24-28). The ALJ ultimately considered plaintiff's testimony regarding her limited daily activities to be outweighed by Dr. Saddler's

---

[5] The plaintiff gives herself "half" baths. (Tr. 24). She cooks only packaged items in the microwave. (Tr. 27). When she grocery shops, she can not push the cart or pick up items off the shelf. *Id.* She drives only short distances. *Id.*

findings. (Tr. 15).

Although the record contained medical records from the plaintiff's treating physician, Dr. Lowe, (Tr. 157-165), the ALJ found that "the record does not contain any opinions from treating or examining physicians that would support a finding that the [plaintiff] is disabled or even has limitations greater than those determined in this decision." (Tr. 15). The ALJ commented that she would expect to see restrictions placed on plaintiff by her treating doctor, given the allegations of disabling symptoms. *Id.*

After evaluating the evidence in the record, including testimony by the plaintiff and a vocational expert [VE] at the hearing, the ALJ held that plaintiff could not perform past relevant work. (Tr. 16). The VE testified that with the limitations set out by the ALJ in her hypothetical, the plaintiff would be able to perform sedentary, unskilled jobs, such as production monitor and surveillance monitor as well as some light, unskilled jobs such as packaging and filling machine operator. (Tr. 35-37). Upon considering plaintiff's age, education, work experience, and residual function capacity, along with the testimony of the VE, the ALJ concluded that the plaintiff was capable of making a successful adjustment to jobs that exist in significant numbers in the national economy, and she therefore was "not disabled" under Medical-Vocational Rule 202.21. (Tr. 16-17).

Following the ALJ's decision, plaintiff submitted additional evidence to the Appeals Council in the form of additional medical records from her treating physician, Dr. Lowe (Tr. 176-177), and requested a review of the ALJ's decision. (Tr. 4). These medical records contained additional treatment notes, including a statement that the plaintiff was "unemployable." (Tr. 177). The Appeals Council denied plaintiff's request for review. (Tr. 1-3).

4

Plaintiff claims that the ALJ made errors when she:

1. improperly applied the Listing for amputation;

2. improperly relied on the unsubstantiated opinions of a medical consultant and failed to rely on the opinion of plaintiff's treating physician; and

3. improperly analyzed evidence of plaintiff's daily activities and capabilities, resulting in a decision unsupported by substantial evidence. Docket 15, p. 13-28.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[6] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[7] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[8] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[9] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the

---

[6]*See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[7]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[8]20 C.F.R. §§ 404.1520(b), 416.920(b) (2003).

[9]20 C.F.R. §§ 404.1520(b), 416.920 (2003).

impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[10] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[11] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[12] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[13]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has the limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[14] even if it finds that the

---

[10] 20 C.F.R. §§ 404.1520(b), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[11] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

[12] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2003).

[13] *Muse*, 925 F.2d at 789.

[14] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

6

evidence leans against the Commissioner's decision.[15] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## DISCUSSION

The ALJ found at step two that plaintiff's amputations of fingers and osteoarthritis were severe impairments; she concluded, however, that plaintiff's description of symptoms and resulting limitations were vague and not convincing. (Tr. 15).

At step three of the sequential evaluation process, a claimant must prove by objective medical evidence that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that she meets each element of the

---

[15]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

listing). In reaching her step five conclusion that plaintiff is not disabled, the ALJ considered the testimony of the VE that plaintiff could perform the requirements of unskilled occupations such as production monitor, surveillance monitor and packaging/ filling machine operator. (Tr. 16-17).

Plaintiff contends on appeal that the ALJ improperly relied on the unsubstantiated opinions of an agency medical consultant who never saw the plaintiff and, consequently, adopted an RFC finding that was not supported by substantial evidence. The erroneous RFC, according to plaintiff, led to an improper application of the Listing for amputation. Docket 15, p.18, 23. Because Dr. Saddler's RFC Assessment Form addressed the plaintiff's right hand amputations but did not mention the prior amputation on plaintiff's left hand (Tr. 166), the plaintiff asserts that he was apparently unaware of the prior amputations. Docket 15, p. 19. To meet the listing criteria of Listing 1.05A, the plaintiff must establish amputation of both hands. Plaintiff claims that the partial amputations on both hands are, in plaintiff's case, functionally equivalent to Listing 1.05A and should result in a finding of disabled. Docket 15, p.13-23. Although this information is critical to analysis under the applicable listings, the record simply does not reflect whether or not Dr. Saddler considered the plaintiff's partial left hand amputation in formulating his opinion.

The plaintiff further claims that the record evidence, including Dr. Lowe's medical records and plaintiff's testimony, does not support Dr. Saddler's findings. Docket 15, p.19. Specifically, she asserts that because there was no evidence in the record that plaintiff could manipulate objects, and because Dr. Saddler did not mention plaintiff's left hand in his evaluation, he must have reached his conclusions operating on the unsupported assumption that

8

the plaintiff could lift weights with absent fingers. *Id.* Dr. Lowe's medical records do not contain evidence to support or contradict plaintiff's ability to manipulate objects. (Tr. 157-165). The ALJ found that "the record does not contain any opinions from treating or examining physicians that would support a finding that the claimant is disabled or even has limitations greater than those determined in this decision." (Tr. 15). The ALJ did not acknowledge, however, Dr. Saddler's silence on the left long finger amputation or the report's lack of detail regarding his evaluation of plaintiff's conditions and limitations. Although conflicts in evidence are for the ALJ to decide, the decision must be supported by substantial evidence. The ALJ should have further developed the record, specifically she should have contacted Dr. Lowe to request a Medical Source Statement.

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). Additionally, "[a]n ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports [her] position.'" *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D.Tex. July 7, 2010) (citing *Loz v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000).

A treating physician such as Dr. Lowe, who treated the plaintiff regularly for at least eight years, has a unique perspective regarding the plaintiff's abilities, limitations, medical history and

9

diagnosis.  Dr. Saddler, an agency physician, evaluated the plaintiff's condition only once, on June 14, 2007, on the basis of the documents in her claim file.  (Tr. 166-173).  His failure to address the plaintiff's additional left long finger amputation created ambiguity as the plaintiff's testimony was not consistent with his report, and Dr. Lowe's medical records did not support his findings.

Further, additional development of the record, specifically in the form of updated medical records and, in particular, a Medical Source Statement from Dr. Lowe, would have been easily obtained.  The ALJ's responsibility to develop the record is to "ensure that [her] decision is an informed decision based upon sufficient facts."  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  The ALJ accorded considerable weight to Dr. Saddler without contacting the plaintiff's treating physician, Dr. Lowe.  (Tr. 11-17).  The court finds this omission particularly significant in light of the fact that the hearing – held only six months after plaintiff's second amputation surgery – plaintiff was still having difficulty, and her hand had not healed satisfactorily.  She was still being treated by Dr. Lowe, and he had told her that he did not know whether she would recover some use of her right hand.  All of this information was presented at the hearing.  For an ALJ properly to afford lesser weight to the treating physician's medical opinions she must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  The ALJ did not possess the information necessary to perform such an analysis, and she made no attempt to get sufficient information, even in the face of plaintiff's obvious condition and testimony at the hearing.  As a result, the ALJ's decision is unsupported by substantial evidence and should be remanded for further proceedings.

After the ALJ's decision, plaintiff submitted additional treatment notes from Dr. Lowe to the Appeals Council. These notes included a statement by Dr. Lowe upon plaintiff's visit to him two weeks after the ALJ hearing that although the plaintiff "has gotten *no worse* . . . . , [a]t this point, I think she is unemployable certainly with both hands so involved." (Tr. 177). Clearly the ultimate question of disability is one left to the Commissioner, *J.B. ex rel. Barboza v. Astrue*, 2010 WL 3622034, *2 (D.Mass. September 17, 2010); *Davis v. Califano*, 599 F.2d 1324,1328 (5th Cir. 1979), but this statement carries with it sufficient gravity of prognosis and is so contradictory to the agency physician's evaluation, that further inquiry was mandated. The Commissioner argues that Dr. Lowe's notes are not "sufficient to show equivalence under the listing." Docket 16, p. 10. Although the Commissioner may ultimately prevail in this assertion, the new evidence further illustrated the inconsistencies in Dr. Saddler's report, plaintiff's testimony and the opinion of her treating physician. These inconsistencies should have prompted the Appeals Council to remand the matter for additional development. When the Appeals Council reviews evidence provided after the decision of an ALJ, it must assess whether the ALJ's decision remains supported by substantial evidence. *Higginbotham v. Barnett*, 405 F.3d 332, 337-38 (5th Cir 2005). The undersigned holds that the decision of the Commissioner should be remanded for further proceedings consistent with this opinion.

PLAINTIFF'S REMAINING ARGUMENTS

Reading the record as a whole, the court concludes that the ALJ's opinion is unsupported by substantial evidence and should be remanded for further development of the record. Because this action is being remanded to the ALJ for further evaluation consistent with this opinion, the court need not address the merits of the plaintiff's remaining arguments at this time.

## CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 29th day of September, 2010.

    /s/ S. Allan Alexander  
UNITED STATES MAGISTRATE JUDGE